No. 38,624

THE CITY OF HUTCHINSON, KANSAS, *Appellant,* v. TOM NAT WEEMS, *Appellee.*

(249 P. 2d 633)

Opinion filed November 8, 1952.

*Bill R. Cole,* assistant city attorney, argued the cause, and *Fred C. Littooy,* city attorney, was with him on the briefs for the appellant.

No appearance for the appellee.

The opinion of the court was delivered by

PRICE, J.: The basic question in this case involves the construction of Section 93 of the Kansas liquor control act (Laws of 1949, chapter 242), now appearing as G. S. 1949, 41-804, making it unlawful to transport alcoholic liquor in an "open bottle," except under certain conditions specified in the statute.

In the early morning hours of December 12, 1950, the 1941 Plymouth four-door sedan being driven by defendant collided with a truck which was parked on a street in the city of Hutchinson. Defendant and his two companions were thrown from the car, sustained injuries, and were removed immediately to a hospital where one of them died a few hours later.

During the course of a routine investigation of the accident police officers found a half pint bottle of alcoholic liquor underneath the left front seat of the car. The seal had been broken and the bottle was only partially full. Another bottle, broken, was found on the pavement a few feet from the car. Presumably it had fallen out as a result of the collision.

The city of Hutchinson had an ordinance relating to the transportation of alcoholic liquor in any vehicle upon a public highway, street or alley within its corporate limits. The language of this ordinance, in all material respects, is identical to the provisions of G. S. 1949, 41-804, which reads:

> "*Transportation of liquor in opened containers unlawful; exception; penalty.* It shall be unlawful for any person to transport in any vehicle upon a public highway, street or alley any alcoholic liquor except in the original package or container which shall not have been opened and the seal upon which shall not have been broken and from which the original cap or cork shall not have been removed, unless the opened package or container be in the locked rear trunk or rear compartment, or any locked outside compartment which is not accessible to the driver or any other person in said vehicle while it is in motion. Any person violating this section shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine of not more than two hundred dollars ($200) or by imprisonment for not more than six (6) months or by both such fine and imprisonment."

Defendant was charged in police court with a violation of the ordinance and was found guilty. He perfected an appeal to the district court where the case was tried *de novo* before a jury.

In the district court the police officers testified as to the bottle found in the car and the broken bottle near the car, as above related.

The evidence of defendant was substantially as follows:

On the evening of December 11, 1950, defendant, in company with one Reese, drove from Hutchinson to Wichita to attend a party at which his engagement to his now wife, June, was to be announced. She was attending college in Wichita. During the evening they went to a dance. Defendant testified that he took no alcoholic liquor with him on his trip to Wichita; that he had none in his possession during the evening; that he did not drink any alcoholic liquor at any time during the evening or night, and that he knew nothing about any bottle or bottles of alcoholic liquor being in his car.

June testified that she drank no alcoholic liquor during the evening or night, and that she knew nothing about any being in the car. She returned to Hutchinson with defendant and Reese and drove the car as far as Newton, at which place defendant took the wheel and drove the rest of the way to Hutchinson. She was asleep at the time of the collision.

Defendant could not recall how the collision occurred, and the evidence infers that he went to sleep while driving. Reese died in the hospital a few hours later. As heretofore stated, defendant

disclaimed any and all knowledge of any alcoholic liquor being in the car. He was employed at a gasoline filling station in Hutchinson. His father also worked there, and the car was owned by the father who used it as a sort of "service car" at the station. On frequent occasions persons other than defendant or his father used the car, with their permission. Two or three weeks prior to the night in question defendant had let some friends of his who were going into the military service use it, and the gist of his testimony was that if any alcoholic liquor was in the car it had been placed and left there by other persons, entirely without his knowledge.

At the trial the city and defendant stipulated as follows:

"Let the record show that it is stipulated and agreed between the parties that Dr. Hall could be called and that Dr. Hall would testify that he saw or smelled no evidence or did not observe any evidence of any drinking or intoxicating liquor on any of the parties that he took care of immediately after the accident."

The city requested the court to give the following instruction:

"If you find that the defendant transported in any vehicle any alcoholic liquor in a container which had been opened and the seal upon which had been broken and from which the original cap or cork had been removed, and that said container of liquor was not in a locked outside compartment which is not accessible to the driver or any other person in said vehicle while in motion, you shall find the defendant guilty."

The court refused to give this instruction standing alone, and gave the following instruction relating to knowledge or reasonable cause to know or suspect that alcoholic liquor was being transported in violation of the ordinance:

"The jury are instructed that in order to find the defendant guilty in this case the defendant must have known or had reasonable cause to know that intoxicating liquor was present in the automobile which he was driving in any place other than a locked outside compartment, with the seal of the bottle broken.

"In this connection the jury are instructed that if you find that the defendant even suspected or should have suspected that intoxicating liquor was being thus transported in his car, then you could find the defendant guilty as charged. However, if the jury finds that the defendant did not know or that he had no reason to know or suspect that liquor was being illegally transported in his automobile, then you will find him not guilty as charged. The defendant is, of course, charged with knowledge of the ordinance quoted in Instruction No. 4 and all of its provisions, and mere ignorance of that ordinance will not excuse him or prevent him from being found guilty under this charge."

The jury returned a verdict finding the defendant not guilty. The city reserved the question and has appealed from the giving of such instruction.

Because of their identical provisions and in the interest of clarity, we will treat this prosecution as having been had under G. S. 1949, 41-804, rather than under the city ordinance, and the sole question, therefore, is whether defendant was entitled to the instruction relating to knowledge or reasonable cause to know or suspect that alcoholic liquor was being transported by him in violation of the statute.

In support of its contention the city, while admitting that under the common law a crime consists of two elements, namely, an evil intention and an unlawful act, argues that the instruction under consideration overlooks the distinction between acts which are *malum in se,* and which include guilty knowledge and intent, and those acts which are *malum prohibitum,* that is, wrong only because prohibited by statute or ordinance, and which require no proof of criminal intent or knowledge, and we are cited to the case of *City of Hays v. Schueler,* 107 Kan. 635, 193 Pac. 311, 11 A. L. R. 1433, in which it was held that a city ordinance regulating operation of motor vehicles on streets of a city and requiring a red rear light to be displayed between certain hours may impose a penalty for its violation without making a specific intent or guilty mind an essential element of the misdemeanor.

In that case a number of our earlier decisions touching upon the general subject matter were reviewed, and the court said:

"If it were necessary to validity of an ordinance that conditions of the character indicated in the motion to quash should be inserted, the full protection which the regulation is designed to afford could not be secured, and evasion would be so easy the regulation would practically if not utterly fail. The regulation falls, therefore, within the numerous class in which diligence, actual knowledge and bad motive are immaterial, and the fact of noncompliance entails penalty."

By analogy, it is argued that to require proof of guilty knowledge or reasonable ground for having such knowledge in every prosecution under the statute in question would in practical effect result in a complete breakdown of law enforcement with respect to this particular offense.

We are also cited to *Yoe v. Hoffman,* 61 Kan. 265, 59 Pac. 351, where in a proceeding to remove certain public officials it was held by a divided court that in order to justify the removal of an officer whose official conduct had been investigated, wrongful intent or fraud on his part need not be shown, and that in criminal prosecutions where the statute contains nothing requiring acts to be done

knowingly and the acts done are not *malum in se* or infamous, but are merly prohibited, the offender is bound to know the law and a criminal intent need not be proved; to *The State v. Bush,* 45 Kan. 138, 25 Pac. 614 (47 Kan. 201, 27 Pac. 834, 13 L. R. A. 607); and to *The State v. Rennaker,* 75 Kan. 685, 90 Pac. 245, where it was held that in a prosecution for the unlawful sale of intoxicating liquor proof that the defendant was ignorant of the intoxicating character of the liquor sold does not constitute a defense.

And, finally, we are cited to *Emporia v. Becker,* 76 Kan. 181, 90 Pac. 798, 12 L. R. A. (N. S.) 946, which involved a violation of an ordinance imposing a license tax for the conduct of certain types of business, and where it was held that as a specific intent was not made an essential element of the offense defined it was immaterial that the defendant may not have intended to violate the ordinance; and to those cases having to do with prosecutions for the sale of adulterated milk and other foods, found in the annotations at 122 A. L. R. 1062, 1088, and 152 A. L. R. 755.

Concededly, many statements found in the authorities cited are persuasive of the city's contention with respect to the construction of the statute before us. On the other hand, in most, if not all, of those decisions, the factual background giving rise to the application of the rule is readily distinguishable from the facts of the instant case. We have no fault to find with the rule announced in the Schueler case, *supra,* for in the very nature of things, and particularly in view of modern automobile traffic, one operating a motor vehicle on the streets of a city after dark without displaying a red rear light violates an ordinance requiring the same, irrespective of his knowledge that such light is not burning. And neither could it be argued that one is not guilty of violating a certain speed limit merely because "he didn't realize he was driving so fast." In neither of those instances is knowledge of the violation itself, or of the existence of the ordinance or statute making such violation an offense, necessary in order to secure a conviction.

In the Hoffman case, *supra,* the defendants were aware that they were doing certain physical things, even though it was claimed they did them with no evil or criminal intent. In the Bush case, *supra,* which was a prosecution based upon the action of a city clerk in improperly registering the name of a voter, the defendant knew that he was registering the voter in question, and the holding of the court was that an information charging a violation of a statute

dealing with the question of registration of voters need not allege criminal intent on the part of the one charged.

In the Rennaker case, *supra*, the defendant knew that he was selling a beverage in the nature of beer, and, as above stated, it was held that ignorance of the intoxicating character of the beverage was no defense. And, in the Becker case, *supra*, the employee (defendant) knew that he was operating a business, and the court merely held that ignorance on his part of the fact he was doing so in violation of a licensing ordinance was no defense.

It will be seen that in each of those cases the defendant knowingly did a certain thing, that is, he committed a specific act, such as registering a voter, selling a beverage to another, or operating a business without paying a license tax.

We think the underlying reasoning in that line of cases is readily distinguishable from the reasoning which should be applied to the facts of the case before us. Since the enactment of chapter 242, Laws of 1949, known as the Kansas liquor control act, it is no longer unlawful to transport alcoholic liquor in the state of Kansas except when done under certain conditions and circumstances specifically prohibited by the act. One of those exceptions is that no alcoholic liquor shall be transported unless it is in the original package or container which shall not have been opened and the seal upon which shall not have been broken and from which the original cap or cork shall not have been removed, unless such opened package or container be in the locked rear trunk or rear compartment, or any locked outside compartment which is not accessible to the driver or any other person in the vehicle while it is in motion. (G. S. 1949, 41-804.) The purpose of the statute is of course self-evident, that is, to lessen the opportunities to drink while driving.

The defense in this case was that defendant had no knowledge whatsoever of the presence of any alcoholic liquor in his automobile, whether it was in an "open bottle" or otherwise. Further, it was to the effect that he had no reasonable ground for suspecting there was any alcoholic liquor in the automobile. In other words, this is not a case where one charged with unlawful transportation of alcoholic liquor knew that he was transporting liquor, but defended on the ground that he did not know the circumstances or condition of the bottle with reference to its having been opened, or with reference to where in the car and under what circumstances it was being carried.

While not conclusive on the question before us, a number of our former decisions relating to the elements of possession under the old liquor laws are helpful. In the case of *The State v. Metz*, 107 Kan. 593, 193 Pac. 177, the defendant was charged with unlawful possession of intoxicating liquor and the court laid down the rule that among the elements of "possession" are, first, the mental attitude of the claimant, the intent to possess, to appropriate to one's self, and, secondly, the effective realization of this attitude. In other words, it was held an intent to exclude others must coexist with the external facts and must be fulfilled in the external, physical facts in order to constitute possession. It was further said that it is this 'requirement which prevents the man in whose building, or automobile, or traveling bag, or pocket, liquor is found, which was surreptitiously placed there by another, from being a violator of the law.

The principle laid down in the Metz case has been followed in many later cases, among them being *The State v. Munson*, 111 Kan. 318, 206 Pac. 749; *The State v. Caldwell*, 115 Kan. 374, 223 Pac. 299; *State v. Bozick*, 122 Kan. 517, 253 Pac. 554; *State v. Colson*, 134 Kan. 147, 4 P. 2d 414, and *State v. Dunning*, 136 Kan. 5, 12 P. 2d 809. It is to be borne in mind that our old "possession" statute was silent on the question of knowledge or intent on the part of the alleged unlawful possessor.

On the other hand, we are well aware of our decisions that under the old liquor law a defense by an innocent mortgagee that he had no knowledge that the automobile in question was being used in the illegal transportation of intoxicating liquor was of no avail in a confiscation proceeding to have such automobile declared a common nuisance. (*State v. Brown*, 119 Kan. 874, 241 Pac. 112 [affirmed in *Van Oster v. Kansas*, 272 U. S. 465, 71 L. Ed. 354, 47 Sup. Ct. 133], and *State v. Morris*, 124 Kan. 143, 257 Pac. 731.)

But, see *State v. Goyette*, 140 Kan. 732, 37 P. 2d 1001, in which it was held that where an automobile was taken from the possession of the owner without his consent and against his will and used in the transportation of intoxicating liquor by the person who deprived the owner of its possession, the automobile was not subject to confiscation as a common nuisance, under the old liquor law, and *State v. Holland*, 141 Kan. 307, 40 P. 2d 469, which was a prosecution for owning and having in possession a motor vehicle, the original numbers of which had been destroyed, removed, altered or

defaced, in violation of a statute, and in which instructions as to intent and knowledge were approved.

In holding as we do, that the instruction complained of was proper, it is not to be understood that we are in any way retreating from the strict construction given various provisions of the Kansas liquor control act in the few cases that have reached this court since its enactment, such as *State, ex rel., v. Russell,* 171 Kan. 709, 237 P. 2d 363, where, among other things, we recognized the fact that under the provisions of G. S. 1949, 41-805, [1], knowledge of a violation of the act on the part of the owner of the premises on which the violation occurred is not made a condition precedent to the validity of a padlock order; and *Chambers v. Herrick,* 172 Kan. 510, 241 P. 2d 748, where it was held that for the purpose of suspension or cancellation of a retail liquor license it is unnecessary that the licensee have knowledge of the violation on the part of his employee.

In at least one section of the liquor control act (§ 78, appearing as G. S. 1949, 41-715) the legislature saw fit to make lack of knowledge of a violation unavailable as a defense. That section provides that:

"No person shall knowingly or unknowingly sell, give away, . . . any alcoholic liquor to . . . any minor; . . ."

In other words, the elements of intent and knowledge on the part of the wrongdoer are entirely removed from the offense.

Had the legislature seen fit to incorporate a similar provision in the transportation section under consideration (G. S. 1949, 41-804) it could have done so, or, if dissatisfied with our construction of it in its present form, can still do so.

In conclusion, it may not be out of place to cite an illustration or two of the harsh and unjust results which easily might come about if the city's contention in this appeal be upheld.

Suppose a man is returning from a business trip and is met at the railroad station by his wife in the family car. Also getting off of the train is a mutual acquaintance, carrying a suit case. He is offered a ride to his office or home, as the case may be. He has a partially full bottle of alcohol liquor in his suit case which is placed in the back seat of the car. The facts are such that the wife, who is driving, has absolutely no knowledge of or reason to suspect that he has any alcoholic liquor in his suit case. Could the legislature have

intended that under those circumstances she is guilty of the unlawful transportation of alcoholic liquor? We do not think so.

Is a bus driver, without knowledge whatsoever or any reasonable cause to suspect that one of his passengers has an "opened bottle" of alcoholic liquor in his pocket or in his brief case on the seat beside him, guilty under the statute merely because such happens to be the case?

Suppose a person is driving his automobile home from work some evening and, seeing a friend standing on a corner waiting for a bus, offers him a ride. Is the driver guilty of unlawful transportation of alcoholic liquor if, entirely without knowledge of the fact on his part, and without any reasonable ground to suspect the same, his passenger has an "opened bottle" of alcoholic liquor concealed on his person or in a sack of groceries which he is carrying, bearing in mind that one convicted under the statute is subject to a fine of not more than $200, or by imprisonment for not more than six months, or by both such fine and imprisonment?

Our construction of this statute is what we deem to have been the legislative intent and is in harmony with what we consider to be common justice. For the reasons stated, the city's contention cannot be upheld, and under the evidence in the case it was not improper to give the instruction complained of.

The ruling of the lower court is therefore affirmed.